**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Walter Earl STEPHENSON, Sr., and**
**Cynthia Ann Goff,**
**Defendants–Appellants.**

**No. 88–2741.**

United States Court of Appeals,
Fifth Circuit.

Oct. 12, 1989.

Mark Englehart, Odis R. Hill, Longview, Tex., for Stephenson.

T.J. Baynham, Jr., Tyler, Tex. (court-appointed), for Goff.

Tonda Curry, Richard L. Moore, Asst. U.S. Attys., Bob Wortham, U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before GARZA, REAVLEY, and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of conspiracy to manufacture and the attempted manufacture of methamphetamine, and of the manufacture of Phenyl–2–Propanone (P2P), 21 U.S.C. §§ 846 and 841(a)(1), Walter Earl Stephenson, Sr. and Cynthia Goff appeal, challenging evidentiary rulings, the ruling on a motion to suppress, and their sentences. We affirm the convictions and the sentence imposed on Goff. We vacate Stephenson's sentence and remand for resentencing.

### Background

In December 1987 Goff informed Billy and Brenda Russell of her interest in setting up a laboratory to manufacture methamphetamine on property owned by the Russells. The Russells promptly informed law enforcement authorities and agreed to record their conversations with Goff. The Russells gave Goff permission to use a vacant trailer located on their semi-secluded property. As Billy Russell understood the plan, Goff would manufacture the methamphetamine and Stephenson would market it.

On December 21, 1987 Billy Russell drove Goff's Cadillac, the trunk of which was loaded with glassware and chemicals needed for the manufacturing operation, from Goff's residence to the Russells' trailer. Goff arrived two days later to begin the process. Later that same day Billy Russell brought Stephenson to the trailer whereupon Goff, Stephenson, and the Russells watched the chemicals "cook." Goff and Stephenson left together and returned the next day, at which time the surveilling officers placed them under arrest.

The recordings made by the Russells included their conversations with Goff as she was setting up the lab and various incriminating statements by Stephenson. As an example, when the Russells arrived at Goff's residence to transport the chemicals and equipment, Stephenson advised Billy Russell, who was to drive the loaded Cadillac, to give the trunk key to his wife so that "if you get stopped, you don't know what's in the trunk of that car." Brenda Russell returned to their trailer in a different vehicle. Again, when Stephenson rode to the trailer with Billy Russell he indicated complicity by explaining that his delay in coming was purposeful, so as not to draw "heat" to the site. And after watching the manufacturing process the evening before his arrest, Stephenson advised Billy Russell to keep gasoline handy so that the lab could be burned in the event of a raid by the authorities.

Goff and Stephenson originally were indicted for conspiracy to manufacture methamphetamine, the attempted manufacture of that controlled substance, and the manufacture of P2P, all offenses occurring during December of 1987. Shortly before trial the government secured a superseding indictment which expanded the period of the conspiracy from February 1987 through December 1987 and added other conspirators, later identified as Kenneth and Vernon Goff. Kenneth and Vernon Goff were called as prosecution witnesses and testified that they had helped the defendants manufacture methamphetamine at Cynthia Goff's residence during February 1987. Before submitting the case to the jury the district court made the James analysis, *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), and ruled that Kenneth and Vernon Goff had not been shown to be coconspirators with the defendants.

The jury found defendants guilty on all counts. The court applied the sentencing guidelines and sentenced Goff to prison for 121 months and Stephenson to prison for 151 months. Both timely appealed.

### Analysis

Goff and Stephenson maintain that the court erred by allowing testimony of extrinsic acts and by admitting duplicate copies of the recordings made by the Russells. Stephenson added that the court should have allowed evidence of ill-motive and misconduct by the Drug Enforcement Administration agents who worked the case. Goff maintains that the evidence seized from the lab should have been suppressed. Both challenge their sentences.

### 1. Extrinsic acts

Defendants maintain that the trial court erred by allowing evidence of extrinsic acts. We review this evidentiary ruling under the abuse of discretion standard. *United States v. Merkt*, 794 F.2d 950 (5th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987). In doing so we follow the rubric enunciated in *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979),

and require that the extrinsic act be relevant to an issue other than the defendant's character, Fed.R.Evid. 404(b), and that its probative value not be outweighed by its prejudicial effect, Fed.R.Evid. 403.

■ The disputed evidence relates to defendants' prior involvement in the manufacture, processing, and distribution of methamphetamine. The evidence of extrinsic acts was relevant to the issue of defendants' intent, accentuated by the defendants' pleas of entrapment. As we reasoned in *Beechum*, "because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." 582 F.2d at 911. Further, the probative value of this relevant evidence is not substantially outweighed by the danger of unfair prejudice, nor was it likely to confuse or mislead the jury. The admission of this evidence was proper.

## 2. Evidence of agent misconduct

Stephenson contends that the court transgressed the confrontation clause of the sixth amendment when it refused to allow evidence of personal misconduct by two local law enforcement officers who played major roles in the investigation leading to his arrest. Stephenson maintains that the two officers were after him because he had complained about their conduct to their superiors. He then argues that evidence of their earlier misconduct bore onto their credibility and was relevant to his defense.

The confrontation clause guarantees that "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Both officers in question were called by the defense. We heretofore have applied the clause to witnesses called by the defense. *United States v. Elorduy,* 612 F.2d 986 (5th Cir.1980). However,

> trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment,

> prejudice, confusion of the issues, ... or interrogation that is ... only marginally relevant.

*Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

■ We perceive no violation of the confrontation clause in the record before us. The trial court allowed examination into matters relevant to the initiation of the investigation, the officers' desire to "get" Stephenson, and the possible encouragement of witnesses to testify loosely or falsely. The court allowed Stephenson to develop the fact that he had made accusations against the officers and that the officers were aware of his complaints. In otherwise limiting the testimony the court did not abuse its discretion. The essential issue before the jury was the validity of the charges against Stephenson and the evidentiary basis for those charges, not the stated or unstated motivation of the officers involved in the investigation leading to the charges. That motivation was relevant only if it tainted the evidence offered by the government. The court permitted defendants an adequate opportunity to develop any such taint. None was forthcoming.

## 3. Validity of search and seizure

Goff argues that the district court erred in refusing to suppress all evidence seized in the lab. The Russells consented to the search. Goff insists that they lacked the authority to consent to the search.

In *United States v. Rizk,* 842 F.2d 111, 112–13 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988), we held:

> When the validity of a "third party consent" search is questioned, the court must decide whether the consenting party and the party claiming the fourth amendment violation mutually used the property searched and had joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user had assumed the

risk that the consenting co-user might permit the search.

■ In the case at bar the Russells allowed Goff to use the trailer housing the lab, but they did not give Goff exclusive control over it. Goff did not have access to the trailer until the Russells unlocked the gate securing their property. There is no evidence that Goff kept the trailer locked, made any effort to limit the Russells' access, or had any expectation of exercising sole dominion and control. We hold that the Russells had authority to consent to the search and that the fruits of that search could be used in evidence.

### 4. Use of duplicate tapes

Defendants challenge the use of duplicates of the tapes made by the Russells. The original recordings were on microcassettes. These were reproduced on full-sized cassettes for use before the jury. Although defendants pose their challenges as objections to the authentication of the duplicates, the thrust of their complaint is that the Russells may not have recorded the conversations faithfully.

■ The district court's ruling on authentication will not be disturbed absent abuse of discretion. *See, e.g., United States v. Lance,* 853 F.2d 1177 (5th Cir. 1988). To prove authenticity, the proponent must present evidence sufficient to support a finding that the recording is an accurate reproduction of the matter recorded. *United States v. Biggins,* 551 F.2d 64 (5th Cir.1977); Fed.R.Evid. 901(a). A duplicate is admissible to the same extent as the original, and absent a charge that the copy is not an accurate reproduction of the original, the original need not be produced. *See Matter of Bobby Boggs, Inc.,* 819 F.2d 574 (5th Cir.1987).

■ The Russells testified that the duplicates were accurate representations of the conversations they had recorded. Credited by the trial judge, absent evidence to the contrary, their testimony suffices to authenticate the recordings. Defendants speculate that the Russells may have distorted the recordings because of bias against them. This objection goes to the weight to be accorded the tapes, not their admissibility. *United States v. Albert,* 595 F.2d 283 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979). Further, as we noted in *United States v. Bright,* 630 F.2d 804, 820 (5th Cir.1980):

> Aside from being completely speculative, it is hard to believe that [the party wearing the recorder] could have effectively changed the character of a running conversation, by turning the device on and off, without such attempts being immediately obvious to those present as well as to anyone listening to the tapes.

(quoting *United States v. Fuentes,* 563 F.2d 527, 532 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977)). There is no error in the district court's decision to admit the duplicate tapes.

### 5. Sentencing

In applying the sentencing guidelines to determine defendants' respective sentencing ranges, the trial court added two points to Goff's offense level for her leadership role pursuant to Guideline § 3B1.1, and placed her in criminal history category I, resulting in a sentencing range of 121–151 months. For Stephenson, the court added two points to his base offense level for obstruction of justice under Guideline § 3C1.1, and placed him in criminal history category III under Guideline § 4A1.2(e)(1), because of a prior imprisonment, resulting in a sentencing range of 151–188 months.

■ In reviewing sentences we gauge findings of fact under the familiar clearly erroneous standard and will defer to the district court's application of the guidelines, absent error. 18 U.S.C. § 3742(e) (1989 Supp.); *United States v. Mejia–Orosco,* 868 F.2d 807 (5th Cir.), *clarifying* 867 F.2d 216 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). We find such an error here. Stephenson's prior sentence should not have been considered in determining his criminal history category because more than 15 years had elapsed between his release from incarceration and the present offense.

Stephenson was released from prison in the summer of 1972. The 15–year period

commenced at that time, 4A1.2(e)(1). The original indictment charged offenses occurring in December 1987, more than 15 years later. The superseding indictment extended the charged conspiracy to February 1987, adding additional coconspirators for the extended period. February 1987 was within the relevant 15–year period. When the trial judge rejected Kenneth and Vernon Goff as coconspirators, the only conspiracy before the court was that originally charged, the December 1987 offense. It was on that basis that the jury convicted. It is upon that factual weave that the trial court must apply the sentencing guidelines.

The government invites us to consider the erroneous weighing of the prior incarceration as harmless error because the trial judge indicated he probably would have imposed a sentence of 151 months even if he could have adjudged less. We may not do so, however, in light of 18 U.S.C. § 3742(f)(1), which directs:

> If the court of appeals determines that the sentence—
>
> (1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court *shall* remand the case for further sentencing proceedings with such instructions as the court considers appropriate . . .

(1989 Supp.) (emphasis added). This provision is part of the 1986 amendment to the Comprehensive Crime Control Act of 1984, eliminating appellate authority to correct sentences. Criminal Law and Procedure Technical Amendments Act of 1986, P.L. No. 99–646, § 73, 100 Stat. 3617 (1986). According to an analysis of the bill presented by Rep. Berman, this provision was "premised upon a belief that it is more appropriate for the district court to impose final sentence." 132 Cong.Rec. 11294 (daily ed. Oct. 17, 1986). Consistent with this clear expression of congressional will, we remand for sentencing.

We reject defendants' other challenges to their sentences. The court correctly considered P2P as a methamphetamine rather than an amphetamine precursor. Guideline § 2D1.4 provides that a defendant convicted of an incomplete conspiracy will be sentenced as if the object of the conspiracy had been accomplished. *United States v. Thomas*, 870 F.2d 174 (5th Cir. 1989). The object of the instant conspiracy was to manufacture methamphetamine.

Further, the court correctly used 12 pounds of P2P in its sentencing calculation. The chemist estimated that upon completion of the process, from the materials on hand up to 12 pounds of P2P could have been produced.

Finally, we disagree with Goff that the district court's refusal to credit her with acceptance of responsibility penalizes her exercise of her right to trial. At trial, Goff contested factual guilt and claimed entrapment. As we recognized in *United States v. White*, 869 F.2d 822 (5th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989), a defendant who contests factual guilt may well encounter difficulty in showing the timely acceptance of responsibility required to qualify for the offense level credit. Denial of the credit is not a penalty for standing trial although not infrequently it may factor into a forfeiture of an element of legislative grace.

The convictions are AFFIRMED. The sentence of Goff is AFFIRMED. The sentence of Stephenson is VACATED and his case is REMANDED for resentencing.