UNITED STATES of America, Plaintiff–Appellee,

v.

Sidney Francis MOURNING, Defendant–Appellant.

No. 89–7005.

United States Court of Appeals, Fifth Circuit.

Oct. 1, 1990.

stantial weight." *United States v. White*, 888 F.2d 490 (7th Cir.1989).

Dick DeGuerin, Houston, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty. and Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, REAVLEY and KING, Circuit Judges.

CLARK, Chief Judge:

The defendant, Sidney F. Mourning, appeals the sentence imposed by the district court after conviction based upon his guilty plea to money laundering charges, in violation of 31 U.S.C. §§ 5316(a), 5322(b). He challenges the findings of the district court concerning base level and specific offense characteristics, leadership role, acceptance of responsibility, and the upward departure from the guidelines. We vacate the sentence and remand for resentencing.

I.

Mourning's conviction and sentence arise from what the United States Drug Enforcement Agency (DEA) termed a "reverse sting" operation. According to the presentence investigative report (PSI), a government informant, acting as intermediary, introduced Mourning to an undercover DEA agent. Mourning and two confederates were to meet with the DEA agent and others to discuss the purchase of 600 pounds of marijuana from the agent.

During the preceding three months, Mourning had traveled from Mexico to the United States on an occasion when he transported more than $10,000 in monetary instruments into the United States without filing the appropriate reports. The record on appeal is not clear regarding the derivation of these funds, but they totalled approximately $55,000. This was to serve as a down payment on the purchase of the marijuana, which Mourning planned to distribute. Mourning kept this money in his home.

The PSI states that Mourning, as the potential buyer of the marijuana, took the lead during discussions with the DEA agent. After inspecting a sample of the marijuana, he offered to buy all the agent had to sell. Mourning insists that no agreement as to price and quantity occurred at that meeting. However, at a meeting the next day, Mourning instructed one confederate to go to the "stash house" to help load the marijuana. He instructed another confederate to go to Mourning's house to retrieve the $55,000 purchase money down payment.

Mourning was originally charged with conspiracy to possess with intent to distribute more than 100 kilograms of marijuana; possession with intent to distribute less than 10 kilograms of hashish, less than 500 grams of marijuana, less than 500 grams of cocaine, and an unspecified amount of methaqualone, all in violation of 21 U.S.C. §§ 841(a)(1), 846. Superseding indictments followed, which partially revised these original charges.

The government made a plea agreement with Mourning under which the indictments would be dismissed if Mourning would waive indictment and plead guilty to an information charging him with money laundering. Mourning signed a factual basis statement declaring that he had "transported more than $10,000 in monetary instruments at one time when he entered the United States from Mexico," and that he "willfully and knowingly failed to file a report of his transportation into the United States of these monetary instruments ... Thereafter, said monetary instruments were used to facilitate a conspiracy to possess with intent to distribute a quantity of marijuana...." The district court accepted his guilty plea.

At sentencing, the district court overruled all of Mourning's objections to the PSI. The PSI calculated Mourning's total offense level as 20 and his criminal history category as II, which dictated a guideline range of 37 to 46 months imprisonment. The judge departed upward by imposing a 120–month sentence, along with supervised release for three years, a $50,000 fine, and a $50 special assessment.

## II.

### A. Sufficiency of the Criminal Information

Mourning challenges the sufficiency of the criminal information and the factual basis to support his conviction and sentence. He asserts that an essential element of the punishment statute applied to him was omitted from the charging instrument and was neither pleaded nor proven before the district court.

Section 5322 sets out the criminal penalties for violations of the money laundering statutes. Section 5322(a) provides in pertinent part that "[a] person willfully violating this subchapter or a regulation prescribed under this subchapter ... shall be fined not more than $250,000, or imprison[ed for] not more than five years, or both." 31 U.S.C. § 5322(a). Section 5322(b), to which Mourning pleaded guilty, provides in pertinent part that "[a] person willfully violating this subchapter or a regulation prescribed under this subchapter ... *while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12–month period,* shall be fined not more than $500,000, imprisoned for not more than ten years, or both. 31 U.S.C. § 5322(b) (emphasis added).

■ Mourning argues that neither the information nor the factual basis demonstrate a concurrent violation of another law or any pattern of illegal activity placing his conduct within the ambit of 5322(b).

Therefore, he contends that he can only be subject to the five-year maximum sentence provided under section 5322(a). Mourning raises the issue for the first time in his supplemental brief. We adhere to the rule that "issues raised for the first time on appeal 'are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice.'" *United States v. Garcia–Pillado,* 898 F.2d 36, 39 (5th Cir. 1990) (quoting *Self v. Blackburn,* 751 F.2d 789, 793 (5th Cir.1985).

Mourning's argument presents a mixed question of law and fact. To the extent this challenge presents a question of law, *e.g.* whether section 5322(b) covers his admitted actions, we note that Mourning intended to plead guilty to a violation punishable under section 5322(b). He never raised any contention in the district court "while that court still had the case under its jurisdiction or to then express [his] dissatisfaction with the sentence." *Id.* Since this case will be remanded, there clearly is no manifest injustice in treating him as bound by his plea agreement on the present appeal.

■ To the extent this challenge presents a question of fact, *e.g.* whether he concurrently violated another law during his money laundering scheme, it is foreclosed. Had Mourning challenged the factual basis for the plea in the district court, that court could have made factual findings on this issue. We could then review those findings. Mourning requests that we restrict the district court upon remand to a sentence not exceeding five years. We refuse to do so. This issue is not properly before us. On remand, the district court is not foreclosed from considering the issue.

■ We note that application of section 5322(b) is not inapposite. A portion of the PSI to which Mourning did not object states that he was aware that this large sum of money was directly related to illegal drug activities and that what he did was wrong and illegal. The district court could find that his conduct fell within the charging instrument.

**B.  Money Laundering:  Base Offense Level and Specific Offense Characteristics**

Mourning challenges the findings of the district court regarding application of the guidelines for money laundering offenses. *See* U.S.S.G. § 2S1.3. This guideline provides that the base offense level will be "(1) 13, if the defendant: (A) structured transactions to evade reporting requirements; (B) made false statements to conceal or disguise the activity; or (C) reasonably should have believed that the funds were the proceeds of criminal activity; (2) 5, otherwise." *Id.* § 2S1.3(a). The specific offense characteristics of this guideline provides: "[i]f the defendant knew or believed that the funds were criminally derived, increase by 5 levels." *Id.* at § 2S1.3(b)(1).

The application note indicates that funds or other property are the "proceeds of criminal activity" or are "criminally derived" if they are property derived from or constitute proceeds obtained from a criminal offense. *Id.* § 2S1.3, application note 1. *See* 18 U.S.C. § 1957(f)(2). The background notes make clear that 13 will be the base level "for the great majority of cases." The base offense level of 5 is reserved only "for those cases in which these offenses may be committed with innocent motives *and* the defendant reasonably believed that the funds were from legitimate sources." U.S.S.G. § 2S1.3, background (emphasis in original).

The district court accepted the PSI recommendation that the base offense level be 13 in this case because the defendant reasonably should have believed that the funds he laundered were the proceeds of criminal activity. The district court further accepted the PSI recommendation that a specific offense characteristic existed to warrant a five-level increase, namely that the defendant actually knew or believed that the funds were criminally derived. Mourning argues that his base offense level should be five, without any specific offense enhancement.

### 1. Standard of review

"District courts are accorded no deference for legally incorrect applications of the sentencing guidelines, although their findings of fact merit considerable deference under the 'clearly erroneous' standard of review." *United States v. Barbontin,* 907 F.2d 1494, 1497 (5th Cir.1990). We review the application of the guidelines fully for errors of law. *United States v. Otero,* 868 F.2d 1412, 1414 (5th Cir.1989). Sentences imposed as a result of incorrect application of guidelines must be reversed. *United States v. Mejia–Orosco,* 868 F.2d 807 (5th Cir.), *clarified,* 868 F.2d 807 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). We find no such misapplication here.

### 2. Base offense level

■ The crux of Mourning's argument is that neither the criminal information nor the factual basis, nor any other part of the record, supports the contention that he knew or should have known that the money he was laundering was criminally *derived* property. He suggests that the evidence regards only intended future use of the funds, and not their derivation. Whether he contests only the finding of knowledge, or also objects to the sufficiency of the evidence supporting the source of the funds, the district court correctly applied section 2S1.3(a)(1)(C) to his case. The government met its burden to prove that the defendant reasonably should have believed that the funds were the proceeds of criminal activity.

Mourning told his probation officer that he, Mourning, "was aware that this large sum of money was directly related to illegal drug activities...." Mourning made no objection to this statement in the PSI. At the sentencing hearing, Mourning assumed that his base offense level was correctly calculated, and he restricted his arguments to the correctness of the five-point increase the PSI recommended under the specific offense characteristic. Applying the clearly erroneous standard of review to this factual determination, we find

that the district court has not erred in its assessment of the base offense level.

■ Since Mourning did not object, the district court made no finding concerning the source of funds, and his knowledge thereof, contained in this record on appeal. This issue cannot be raised for the first time on appeal.

### 3. Special offense characteristics

■ Mourning argued before the district court that the Sentencing Commission exceeded its authority by making knowledge a factor in the specific offense characteristics under section 2S1.3(b)(1). He does not pursue this issue on appeal. Instead, he asserts again that there was no evidence that the laundered dollars were "criminally derived." He also may be challenging the finding of knowledge on his part by the district court. However, the same facts which support fixing the base offense level at 13 support the five-level enhancement for this special offense characteristic. The uncontested portions of the PSI support not only the criminal derivation of the funds, but also his knowledge thereof.

■ This sort of factual determination must be objected to at sentencing if it is to be an issue on appeal. Mourning could have objected and allowed the district court to make a reviewable finding of fact. In a plea bargain case, this court will not review challenges to the factual basis of a guideline's applicability which has not been preserved by objection in the district court.

### C. Leadership Role

■ The district court followed the recommendation contained in the PSI that Mourning's criminal offense level be increased two levels based on his leadership role in the conspiracy. *See* U.S.S.G. § 3B1.1(c). Mourning argues that this was legal error. He was convicted solely for his single act of laundering funds between Mexico and the United States. He argues that there could be no leadership role upon which to increase his offense level. We agree. The government concedes that the case of *United States v. Barbontin,* 907 F.2d 1494 (5th Cir.1990) controls here.

In *Barbontin,* a case involving U.S.S.G. § 3B1.1(a), we held that the court must not look beyond the transaction underlying the offense of conviction in calculating the number of persons led by the defendant. *Id.* at 1498. The same rule should apply to the defendant's leadership role under 3B1.-1(c). The court may only apply this aggravating factor if the defendant maintained a leadership role in the transaction on which his conviction is based.

Mourning was the only party to the money laundering activity. His role in subsequent activity cannot be considered on remand.

### D. Acceptance of Responsibility

Mourning makes a similar argument concerning the district court's denial of a two-level decrease for his purported acceptance of responsibility. *See* U.S.S.G. § 3E1.1. He contends that the district court could only gauge acceptance of responsibility with regard to money laundering, the offense of conviction. He contends he should not be penalized for maintaining he was innocent of related criminal conduct. We disagree. The guideline concerning leadership role looks only to the specific offense. The guideline on acceptance of responsibility contains no such restriction.

The PSI indicates Mourning sought to minimize his role in the drug trafficking and conspiracy activities by "characterizing himself as a peripheral observer or minimal participant." However, the PSI concluded from the DEA investigation and the district court's findings on Mourning's motion to suppress that Mourning took the lead during meetings and negotiations concerning the related conspiracy.

### 1. Section 3E1.1

Section 3E1.1 allows the district court to reduce the offense level by two "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." U.S.S.G. § 3E1.1(a). A defendant may receive this reduction regardless of whether he pleads guilty or proceeds to trial. *Id.* § 3E1.1(b). By the same token, a defendant who does plead guilty is not necessarily entitled to a reduction as a matter of right. *Id.* § 3E1.1(c). Because of the district court's unique position to assess the defendant's acceptance of responsibility, we have held that the sentencing court's factual determinations on this matter are entitled to even greater deference than that accorded under a clearly erroneous standard of review. *United States v. Roberson,* 872 F.2d 597, 610 (5th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

The government misconstrues Mourning's contentions in this regard. It views Mourning's argument to be that his plea of guilty entitles him to the credit. Thus, it argues that lack of candor and "coyness" with the probation officer is a sound basis for denial of reduction. *See United States v. Barreto,* 871 F.2d 511, 513 (5th Cir.1989). Mourning's argument is that the district court impermissibly denied a reduction by viewing too broad a range of his conduct. He bases this argument on the decision of the First Circuit in *United States v. Perez-Franco,* 873 F.2d 455 (1st Cir.1989), which held that any reduction based upon this guideline may not require the defendant to accept responsibility for charges to be dismissed as part of a plea agreement. *See also United States v. Oliveras,* 905 F.2d 623 (2d Cir.1990) (same). *Contra United States v. Henry,* 883 F.2d 1010 (11th Cir. 1989); *United States v. Gordon,* 895 F.2d 932 (4th Cir.1990). This issue is one of first impression in the Fifth Circuit. We hold that, before a defendant is entitled to a reduction for acceptance of responsibility, he must first accept responsibility for all of his relevant criminal conduct.

The burden upon the defendant is to demonstrate clearly to the court his affirmative acceptance of personal responsibility for "his criminal conduct." The application notes illuminate the broad range of activities that this encompasses. "[A]ppropriate considerations include, but are not limited to, the following ... (c) voluntary and truthful admission to authorities of involvement in the offense *and related conduct.*" U.S.S.G. § 3E1.1, application note 1 (em-

phasis added). The amendment made to this guideline is also instructive. While section 3E1.1(a) originally spoke in terms of "the offense of conviction," this provision was deleted and replaced with the present language "his criminal conduct." *See* Appendix C: Amendments to the Sentencing Guidelines Manual of October 1987. *Perez–Franco*, 873 F.2d at 459, took the position that this amendment only clarified the guideline's applicability to plea agreement scenarios, and that the only "plausible reading" of the guideline required acceptance of personal responsibility only for the criminal conduct to which he pleads guilty. To the contrary, we are convinced that this guideline now speaks to acceptance of responsibility for all relevant criminal conduct.

■ Relevant criminal conduct must be sufficiently connected to the offense of conviction to justify the use of any guideline as an adjustment. *See United States v. Vasquez*, 874 F.2d 250, 251 (5th Cir.1989) (defendant's gun found in home several miles from site of drug arrest not sufficiently connected to allow upward adjustment). The guidelines define "relevant conduct" to include "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that *otherwise were in furtherance of that offense....*" U.S.S.G. § 1B1.3(a)(1) (emphasis added). It also includes "the defendant's state of mind, intent, motive and purpose in committing the offense...." *Id.* at § 1B1.3(a)(4).

The commentary to this guideline notes that conduct "*for which the defendant is otherwise accountable*" includes all conduct that the defendant "counseled, commanded, induced, procured, or willfully caused." *Id.*, application note 1. The commentary also states that the guidelines counsel incorporation of "broader notions of intent or purpose that are not elements of the offense, *e.g.*, whether the offense was com-

mitted for profit, or *for the purpose of facilitating a more serious offense.* Accordingly, such factors must be considered in determining the applicable guideline range." *Id.*, background (emphasis added).

■ Relevant conduct may extend beyond the conduct and mental state necessary to the offense of conviction. Establishing this conduct does not require proof beyond a reasonable doubt. It only requires factual findings by the sentencing court by a preponderance of the evidence, which are subject to the "clearly erroneous" standard of review on appeal. *See United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989); *see also United States v. Isom*, 886 F.2d 736, 739 (4th Cir.1989).

■ The conduct for which Mourning had to accept responsibility to be entitled to the reduction was all conduct otherwise in furtherance of the money laundering for which he was convicted. This includes conduct demonstrating the intent, motive and purpose underlying his laundering of money, as well as the subsequent criminal conduct he induced, procured and willfully caused by use of these funds. The indictment and factual basis both addressed his role in the conspiracy to possess with intent to distribute marijuana. Mourning admits in his brief that he did not accept responsibility for all aspects of this conspiracy. We cannot say that the district court's denial of a reduction for acceptance of responsibility was clearly erroneous.

### 2. Constraints of the Fifth Amendment

■ Both the First and Second Circuits also based their decisions upon what they perceive to be constraints imposed by the defendant's Fifth Amendment right against self-incrimination—that requiring the defendant to accept responsibility for uncharged criminal conduct compels him to incriminate himself because acceptance could be used against him in a later prosecution.

In *United States v. White*, 869 F.2d 822 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989), we faced a similar challenge to this guideline

based upon the defendant's Sixth Amendment right to trial. We held that "[e]ven assuming that the sole purpose of this guideline is to encourage guilty pleas, it is not unconstitutional for the government to bargain for a guilty plea in exchange for a reduced sentence." *Id.* at 826. "The fact that a more lenient sentence is imposed upon a contrite defendant does not establish a corollary that those who elect to stand trial are penalized." *Id.*

Similar logic has been adopted by the Eleventh Circuit regarding this Fifth Amendment challenge. "Section 3E1.1 may well affect how criminal defendants choose to exercise their constitutional rights. But 'not every burden on the exercise of a constitutional right, and not every encouragement to waive such a right is invalid.'" *United States v. Henry,* 883 F.2d 1010, 1011 (11th Cir.1989) (footnote omitted) (*quoting Corbitt v. New Jersey,* 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978). We agree with the Eleventh Circuit that this guideline simply "formalizes and clarifies" a tradition of leniency toward contrite defendants. *See Roberts v. United States,* 445 U.S. 552, 558, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980). "To hold the acceptance of responsibility provision unconstitutional would be to say that defendants who express genuine remorse for their actions can never be rewarded at sentencing. This the Constitution does not require." *Id.* at 1012.

The First and Second Circuits rely on cases demonstrating the so-called "unconstitutional conditions" theory. *See, e.g., Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). We find these decisions distinguishable. They involve situations where, if a defendant took no action that would incriminate himself, the government would exact or increase punishment. Here, should the defendant choose not to accept responsibility for all of his relevant criminal conduct, nothing happens. No increase in punishment occurs. The previously calculated guideline range remains constant. The rule in *White* supports our reasoning that affording a possibility of a more lenient sentence does not *compel* self-incrimination. To the extent the defendant wishes to avail himself of this provision, any "dilemma" he faces in assessing his criminal conduct is one of his own making. *See Henry,* 883 F.2d at 1011. The government is permitted to reward contrition. This is not the same as compelling self-incrimination.

## E. Upward Departure from the Guideline Range

■ Based on Mourning's total offense level and criminal history category, the guideline range for imprisonment was from 37 to 46 months. The district court departed by imposing a 120–month sentence, the maximum allowed under 31 U.S.C. § 5322(b). The court justified its departure with the following brief statement:

> Mr. Mourning, the court has considered the record in this case, as well as the presentence investigation report and the arguments made by counsel at this hearing this morning.
>
> And based upon those matters, it's the finding of this court that based upon the nature and circumstances of the offense, the criminal history and characteristics of the defendant, the need to reflect the seriousness of the offense, the need to promote respect for the law and provide just punishment in this case, as well as to afford adequate deterrence to similar criminal conduct and protect the public from further criminal offenses of this defendant, the court is going to depart upward in this case and impose the following sentence....

Mourning argues that the district court failed to articulate a proper basis for departure from the applicable guideline range. The government concedes this point. We agree.

A sentencing court may depart upward from the guidelines and impose a sentence outside the guideline range if the court finds that an aggravating circumstance exists that was not adequately taken into

consideration by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b). The sentencing court must state the reasons for the departure, and the sentence imposed must be reasonable in light of the articulated reasons. 18 U.S.C. § 3742(e)(3). *See United States v. Burch*, 873 F.2d 765, 768 (5th Cir.1989).

In the present case, the district court did no more than recite a litany of possible grounds for departure listed in the sentencing statutes. *See* 18 U.S.C. § 3553(a)(1), (2). However, the statute makes clear that if the sentence "is not of the kind, or is outside the range" determined by the district court, it must state in open court "the *specific* reason for the imposition of a sentence different from that described." 18 U.S.C. § 3553(c)(2) (emphasis added). The legislative history of this provision warns against subjecting the statement of reasons "to such legalistic analysis that will make judges reluctant to sentence outside the guidelines when it is appropriate or that will encourage judges to give reasons in a standardized manner." S. Rep. No. 225, 98th Cong., 2d Sess. 80, *reprinted in* 1984 U.S. Code Cong. & Ad. News 3182, 3263.

Gauging the stated reasons under these statutory and congressional directives, we find that the district court has failed to state *any* reason justifying an almost triple departure from the maximum guideline range. The sentencing judge's standardized reasoning here could find application to almost any defendant brought before the court for sentencing. By requiring a "specific reason," section 3553(c)(2) requires the sentencing court to identify the *exact* circumstance or circumstances that warrant departure which were not adequately considered by the Sentencing Commission. Absent such a "particularized rationale," we can gauge neither the reasonableness of the departure nor the extent to which any justification exists for departure. *United States v. Lopez*, 875 F.2d 1124, 1127 (5th Cir.1989).

■ The case must be remanded. We cannot correct a legally defective sentence on appeal. *United States v. Stephenson*,

887 F.2d 57, 62 (5th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1151, 107 L.Ed.2d 1054 (1990). *See* 18 U.S.C. § 3742(f)(1). On remand, the district court may justify any departure, including that made, by identifying factors related to the nature of Mourning's offense which were not adequately considered by the Sentencing Commission. *United States v. Shaw*, 891 F.2d 528, 530 (5th Cir.1989). The PSI identified two possible grounds for departure: criminal purpose, U.S.S.G. § 5K2.9, and adequacy of the criminal history category, *id.* § 4A1.3. "In either instance, the court must specify the unusual circumstance and explain why it warrants departure." *Shaw*, 891 F.2d at 530.

### III.

The sentence is VACATED and the case is REMANDED for resentencing.