UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Angel VILLARREAL,
Defendant–Appellant.

No. 89–5671
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1991.

Rehearing and Rehearing En Banc
Denied Jan. 31, 1991.

Farley P. Katz, Matthews & Branscomb, San Antonio, Tex. (Court-appointed), for defendant-appellant.

LeRoy M. Jahn, Chris K. Gober, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Jose Angel Villarreal pled guilty to possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and was sentenced to 121 months imprisonment under the Federal Sentencing Guidelines. He appeals the district court's four-point upward adjustment of his base offense level, arguing that the court's factual findings (1) that he possessed a dangerous weapon during commission of the drug offense, (2) that he was an organizer, leader, manager, or supervisor of the charged offense, and (3) that he had not accepted responsibility for his criminal conduct were clearly erroneous. For the reasons stated below, we affirm.

I

After agents from the Drug Enforcement Administration ("DEA") received information in November, 1988, that the appellant Villarreal was distributing vast amounts of cocaine, they immediately began an extensive undercover investigation of his alleged criminal activity. In an attempt to make an undercover purchase of cocaine, a DEA agent was introduced to Villarreal by a confidential informant on November 16. On that same day, the agent purchased three ounces of cocaine from Villarreal and advised the defendant that he had several hundred pounds of marijuana available for sale at $450.00 per pound. Villarreal proposed exchanging 300 pounds of marijuana for cash and cocaine and informed the agent that he would need a few days to raise the money. Negotiations for the sale were carried over to a second meeting on November 21, when the agent purchased another three ounces of cocaine from Villarreal. During that meeting, Villarreal told the agent that he and "his people" had plenty of money and were ready to pay cash for whatever amount of marijuana the agent had. The agent informed Villarreal that he would have approximately 500 pounds of marijuana in the area before the end of the month. Villarre-

al stated that he would need at least one day's notice before the marijuana arrived in San Antonio, because his people would be travelling from Dallas. He also agreed to sell two to three kilograms of cocaine immediately after the marijuana transaction, since the agent would have the money for such a substantial purchase at that time.

On December 1, the undercover officer met with Villarreal at Villarreal's residence. They then went to a commercial storage facility where Villarreal viewed the marijuana the agent had proposed to sell. Villarreal informed the agent that he and his friends from Dallas would be ready to purchase the entire amount. On December 5, Villarreal told the agent that his people were ready to purchase 125 pounds of marijuana, that the cocaine was available, and that they were waiting for him at his apartment.

A confidential informant went to Villarreal's residence prior to the agent's delivery of the marijuana to verify the presence of the money and cocaine. Unfortunately, the informant was recognized by Fidel Casteneda Rodriguez, one of Villarreal's two associates, and Villarreal immediately called off the deal. While the informant met with the agent who had just arrived at the apartment to explain this turn of events, Villarreal and his two Dallas associates, Rodriguez and Rodolfo Garza–Flores, attempted to flee the scene. Rodriguez and Garza–Flores ran toward an automobile into which Villarreal had just thrown a cloth bag containing large amounts of cash. Villarreal, not yet entirely cognizant of the ruse, tried to persuade the agent to follow them to a different location. Villarreal and his two associates were then arrested by a DEA surveillance team. Alicia Torres, Villarreal's girlfriend, was discovered inside the residence but was not arrested or prosecuted.

The agents who searched Villarreal's apartment found a triple beam balance scale, two electronic pagers, 1.8 kilograms or approximately four pounds of cocaine in eleven separate packets, .24 grams of methamphetamine, 1.9 grams of marijuana, $19,800 in cash, a bulletproof vest, and four rifles, including a Remington model 700, 30.06 caliber rifle, a Winchester Model 70 .270 caliber rifle, a Stevens .22 caliber Model 878 rifle, and a Rohn Model No. 63, .22 caliber pistol. Additional weapons were discovered outside the apartment, including a Smith and Wesson Model 66, .357 magnum revolver located in an automobile allegedly belonging to Villarreal's sister and a Rohn RG 17 caliber .38 special seized from Garza–Flores during his arrest. The Winchester Model 70 caliber .270 rifle and the Smith and Wesson .357 magnum revolver were later determined to be stolen weapons. An additional $19,100 in cash was found stashed in the cloth bag Villarreal had thrown inside a vehicle parked outside the apartment. Villarreal admitted at the time of his arrest that he intended to use the money found in the house to pay for the marijuana.

## II

Villarreal was charged in a three-count indictment; two counts charged distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), and the remaining count charged possession of approximately four pounds of cocaine with intent to distribute, also in violation of 21 U.S.C. § 841(a)(1). Counts one and two arose out of the November 16 and 21 sales of cocaine, respectively. Count three arose out of the aborted December 5 cocaine transaction. Pursuant to a written plea agreement, Villarreal pled guilty to the third count of the indictment, and the government dismissed the other two charges.

The sentencing court determined that a two-point upward adjustment of Villarreal's base offense level of 26 was warranted under section 2D1.1(b)(1) of the Federal Sentencing Guidelines because the defendant possessed dangerous firearms during commission of the drug offense. The court also determined that another two-point upward adjustment was appropriate under section 3B1.1(c) because of Villarreal's leadership role in the crime. Finally, the district court refused to reduce defendant's sentence by two levels for acceptance of responsibility under section 3E1.1.

Thus, based on a criminal history category of one and an adjusted offense level of 30, the trial judge arrived at a sentencing range of 97 to 121 months and sentenced Villarreal to the maximum limit of the range, 121 months imprisonment followed by a five-year period of supervised release. Villarreal filed a timely notice of appeal.

### III

As we have noted, Villarreal challenges the district court's decision to adjust his sentence upward by four levels because of his possession of dangerous weapons during commission of the offense and because of his aggravating role in the crime. He further challenges the court's refusal to reduce his offense level by two points for acceptance of responsibility. Thus, he contends if the district court had not clearly erred in its factual determinations, the appropriate offense level would have been 24, mandating a sentencing range between 51 and 63 months.

### A

■ Section 2D1.1(b)(1) instructs the sentencing court to increase a defendant's base offense level by two points "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense." Under the guidelines, the offense level should be increased "unless it is clearly improbable that the weapon was connected with the offense." *See United States v. Hewin*, 877 F.2d 3, 5 (5th Cir. 1989). As noted previously, federal agents seized four unloaded rifles from the defendant's bedroom and a handgun from a kitchen drawer where the defendant had on a prior occasion stored small amounts of cocaine. Most of the cocaine confiscated during the search of Villarreal's residence following the defendant's arrest was found in the kitchen. Additionally, a loaded .357 magnum revolver was found in a car parked outside Villarreal's residence. Although the car was registered in the name of the defendant's sister, Villarreal had access to the vehicle and was observed on numerous occasions by DEA agents driving the car in connection with his drug trafficking activities.

■ Villarreal argues that from the naked fact that weapons were found on his premises during the commission of the charged offense, we cannot legitimately infer their use in connection with the crime. Villarreal's misconstrues the plain language of this sentence enhancement provision; under this section firearm possession per se is a permissible basis for an upward adjustment of the defendant's sentence. *See Otero*, 868 F.2d at 1414. It is not necessary for possession of the weapon to play an integral role in the offense or to be sufficiently connected with the crime to warrant prosecution as an independent firearm offense. *See Hewin*, 877 F.2d at 5 (upholding two-level increase under § 2D1.1(b) notwithstanding sentencing court's belief that defendants did not intend to use the "dinky little gun" to further drug offense). As stated in the application notes, weapon possession by drug traffickers increases the danger of violence. An increased term of imprisonment therefore more accurately reflects the defendant's culpability when he chooses to introduce this element of danger into his drug offense.

■ The defendant next directs our attention to the commentary to section 2D1.1(b)(1), which states that the enhancement provision should not be applied if, for example, "the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Villarreal likewise characterizes the unloaded rifles as hunting equipment. He further disputes the court's reliance on the loaded revolver. He argues that it was found in a car not shown to be owned by him and that others also had access to the vehicle.

We do not find the defendant's arguments persuasive. Section 1B1.1 of the guidelines specifically defines firearms as including "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive." Thus, we do not read into this definition any requirement that the weapons found in the possession of the defendant be loaded.

Rather, we find that the key to this specific offense characteristic is the placement of the weapons and their ready accessibility. *See United States v. Paulk*, 917 F.2d 879 (5th Cir.1990) (inoperable character of gun does not determine whether defendant was in possession of dangerous weapon during commission of offense).

■ Furthermore, we do not believe that "hunting equipment" is a fair portrayal of these weapons. They were, after all, found in the residence from which Villarreal was admittedly engaged in selling drugs and they were intermingled with other assorted incriminating items, including a bullet proof vest, which were also clearly used to facilitate Villarreal's drug activities. *See United States v. McKeever*, 906 F.2d 129, 134 (5th Cir.1990) ("Where several guns ... are found on the premises of a drug laboratory, the obvious inference is that they were there to protect the unlawful activity."); *United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir.) ("firearms are 'tools of the trade' of those engaged in illegal drug activities"), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987).

■ Finally, whether Villarreal held title to the car where the loaded .357 revolver was seized does not control the district court's finding that he possessed the weapon during commission of the offense. Villarreal concedes that he had access to his sister's car. This admission, together with evidence that he used the car while negotiating his drug transactions, fully supports the district court's holding that he was in constructive possession of the revolver. *See United States v. Otero*, 868 F.2d 1412, 1415 (5th Cir.1989) (defendant who carried firearm in van parked outside hotel room where he sold cocaine to agents was in constructive possession of weapon during commission of offense since van was used to transport drug).

■ Villarreal also contends that this section of the sentencing guidelines relating to use of firearms is unconstitutional because it creates an impermissible presumption in favor of the government. The notes following this section mandate application of an upward adjustment if the weapon was present "unless it is clearly improbable that the weapon was connected with the offense." Villarreal argues that this provision violates due process because it places the burden on the defendant to show that there was no connection between the weapon and the offense. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (government must prove beyond reasonable doubt every fact necessary to constitute charged offense). Because Villarreal did not raise this point before the district court, the issue is not preserved for appeal. We note, however, that in other courts of appeals this section of the sentencing guidelines has passed the constitutional test against identical arguments. *See United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989) (guidelines create exception, and not presumption, that connection existed); *United States v. McGhee*, 882 F.2d 1095, 1097–99 (6th Cir. 1989) (due process guarantee not violated by placing burden of proof on defendant regarding factor bearing on extent of punishment).

In conclusion, we hold that the district court's decision to adjust Villarreal's base offense level two levels because of his possession of weapons during commission of the drug offense was not clearly erroneous and is thus affirmed.

### B

■ Villarreal next contends that the district court erred in determining that he exhibited a leadership role in the drug offense and thus in increasing his offense level by two points under section 3B1.1(c) of the sentencing guidelines. That section allows a two-level increase "if the defendant was an organizer, leader, manager, or supervisor in any criminal activity" that involved less than five participants.

Villarreal argues that the district court's findings were based on participants involved in the aborted marijuana transaction rather than in the cocaine transaction to which he pled guilty. In *United States v. Barbontin*, 907 F.2d 1494 (5th Cir.1990),

we held that "for purposes of measuring the size of the enterprise, ... § 3B1.1(a) focuses upon the number of *transactional* participants, which can be inferentially calculated provided that the court does not look beyond the offense of conviction to enlarge the class of participants." *Id.* at 1498. In *United States v. Manthei*, 913 F.2d 1130 (5th Cir.1990), we further clarified the scope of the offense for purposes of this section: "[W]hile the § 3B1.1(a) 'offense' is the 'offense charged,' the scope to be considered is, where applicable, much wider—it encompasses ... the underlying activities and participants that directly brought about the more limited sphere of the elements of the specific charged offense." *Id.* at 1136. Because section 3B1.1(a) differs from section 3B1.1(c) only in the number of participants involved in the criminal organization, we conclude that *Barbontin* and *Manthei* are controlling authority in the instant case.

In *Barbontin*, although the prosecution presented evidence that the defendant was the leader of a drug-importation enterprise involving ten or more individuals, it failed to demonstrate that a minimum number of participants were actually involved in the particular transaction underlying his conviction. We reversed and remanded the district court's four-level increase of the defendant's sentence, holding that a section 3B1.1(a) adjustment must be anchored to the transaction leading to the conviction.

In *Manthei*, after the defendant was charged with conspiracy to distribute amphetamine, officers discovered that the defendant owned a large laboratory and had manufactured the drug that she had sold in the offense transaction. We upheld an upward adjustment in her sentence for her leadership role in manufacturing the drug even though it was not an element of the charged distribution offense because it was an integral part of the criminal activity that led to her conviction.

In the instant case, the district court clearly considered Villarreal's role in the marijuana transaction in holding that he played a supervisory role in his cocaine offense of conviction. There is no indication that his two associates, Rodriguez and Garza–Flores, were involved in providing or dividing up the cocaine Villarreal intended to distribute. The record discloses only that the two came from Dallas with money to purchase 125 pounds of marijuana. Nevertheless, we view the proposed exchange of the cocaine and marijuana as interdependent. The negotiations between Villarreal and the agent show that the money generated from the purchase of the marijuana would be used to bankroll the sale of the cocaine; without the marijuana transaction, the cocaine transaction could not succeed. Thus, the preparations between Villarreal and his people regarding the purchase of the marijuana formed an inseparable part of the underlying cocaine distribution offense.

Although we reach a different conclusion, our holding today is not inconsistent with *United States v. Mourning*, 914 F.2d 699 (5th Cir.1990). In *Mourning*, the defendant pled guilty to money laundering under a plea agreement that dismissed all drug conspiracy charges. The district court increased the defendant's criminal offense level based on his leadership role in the dismissed drug charges, apparently because the laundered money in question was to be used later to purchase the subject drugs for distribution. We held that the district erred because it considered defendant's role in activities not related to the money laundering conviction.

The facts in *Mourning* are distinguishable from those in the present case. In *Mourning*, the criminal conduct to which the defendant pled guilty occurred three months before the events surrounding the dismissed drug conspiracy charges. Furthermore, the money laundering charge pertained to events that occurred at the United States/Mexican border, while the drug charges stemmed from the defendant's attempt to purchase and distribute drugs in Texas. Thus, unlike the transactions in the present case, the two transactions in *Mourning* were remote from each other and were only loosely linked together in a chain of criminal activity. Villarreal's leadership role in the purchase of the marijuana was fully attributable to the cocaine

transaction because each transaction constituted a part of one deal that Villarreal had put together, scheduled to occur simultaneously at the same location.

Considering, as we do, these transactions one for the purpose of this enhancement provision, we hold that the district court's findings were not clearly erroneous. Villarreal's residence was the base of operations for the drug transactions; Villarreal exercised control over Rodriguez and Garza–Flores in the sense that he had put the deal together and had arranged for them to travel from Dallas to consummate the purchase of the marijuana; the amount and purity of the cocaine located in Villarreal's apartment indicated a sophisticated drug operation; Villarreal directed the failed attempt to escape from the crime scene by locking the confidential informant out of the apartment upon discovering his true identity; and, finally, Villarreal ordered the agent to follow them to a different location. Clearly, Villarreal held a leadership role in this offense. *See United States v. Vasquez,* 874 F.2d 250, 252 (5th Cir.1989) (adjustment not clearly erroneous where defendant was main participant in negotiations with undercover officer and used his home as base of operations); *United States v. Barreto,* 871 F.2d 511, 512 (5th Cir.1989) (court's finding that defendant was organizer was not clearly erroneous where defendant orchestrated time, place, and manner of delivery of drugs and was able to obtain drugs without advance payment). We thus reject Villarreal's challenge to this adjustment of his sentence.

### C

Villarreal finally contends that the district court erred in not reducing his offense level under section 3E1.1 of the sentencing guidelines for acceptance of responsibility. The district court's finding on this matter is entitled to great deference and will not be set aside unless it is without foundation. *See United States v. Roberson,* 872 F.2d 597, 610 (5th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989). As a preliminary matter, we note that Villarreal's guilty plea does not automatically entitle him to a reduction of his sentence. U.S.S.G. § 3E1.1(c); *United States v. Pologruto,* 914 F.2d 67 (5th Cir.1990). We also note that the defendant bears the burden of proof under this section. *United States v. Mayard,* 891 F.2d 530, 532 (5th Cir.1989).

Villarreal argues that the evidence presented to the trial court demonstrated his sincere remorse for his drug offense. He conceded responsibility for his acts at his rearraignment and at his sentencing; he consented to a search of his residence at the time of his arrest; he admitted to federal agents that he had intended to use the money seized from his residence to purchase marijuana.

The presentence report, however, indicated that during the presentence interview, Villarreal claimed that he had been entrapped into committing the drug offense by a persistent confidential informant and that the money found at the time of his arrest had been borrowed from his father and brother to establish a used car business. Villarreal's attorney insists that the defendant, because English was his second language, may not have known the proper meaning of the word "entrapped." The district court, however, acted within its discretion in rejecting this explanation.

In the light of this evidence and in view of the unique position of the trial judge to evaluate the sincerity of Villarreal's testimony, we cannot say that the district court was without adequate foundation in concluding that the defendant had not demonstrated an affirmative recognition of his personal responsibility.

### IV

For the foregoing reasons, Villarreal's sentence is

AFFIRMED.