**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Jesse SMALLWOOD, Defendant–Appellant.**

**No. 90–5524.**

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1991.

Rehearing and Rehearing En Banc Denied Feb. 22, 1991.

Stewart J. Alexander, Lynda S. Ladymon, San Antonio, Tex., for defendant-appellant.

Richard L. Durbin, Jr., LeRoy Morgan Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GARZA and DAVIS, Circuit Judges.

CLARK, Chief Judge:

Robert Smallwood appeals the sentence imposed by the district court upon his plea of guilty to possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). We affirm.

I

Robert Smallwood and a co-defendant, Marlin Bostdorf, were charged in an original indictment with conspiracy to manufacture methamphetamine, 21 U.S.C. §§ 841(a)(1), 846, and possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1). A superseding indictment recharged these two counts and added a count against Smallwood for aiding

and abetting the distribution of amphetamine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The original indictment arose from equipment, chemicals and controlled substances seized at Smallwood's residence. The added charge arose from an earlier transaction based on Smallwood's role in the sale of 26 grams of 34 percent pure amphetamine hydrochloride to an undercover agent of the United States Drug Enforcement Agency (DEA).

Smallwood and Bostdorf entered plea agreements with the government. Prior to the court's acceptance of Smallwood's plea, the government's attorney read the following factual basis into the record:

That on November 28th of 1988, law enforcement agents executed a federal search warrant upon the residence of Robert Smallwood and Debora Bullock [Smallwood's common-law wife] located at Pipe Creek, Texas, Bandera County, here in the Western District of Texas.

During the execution of the warrant, they discovered a non-operational clandestine laboratory for the manufacture of methamphetamine. Agents seized a substantial quantity of precursor chemicals utilized in the manufacture of methamphetamine and amphetamine, as well as liquid methamphetamine.

During the execution of the warrant, Defendants Robert Smallwood and Marlin Bostdorf had arrived at the residence. After being advised of their constitutional rights against self-incrimination and following contact with law enforcement officers, Robert Smallwood told the agents that all of the chemicals, equipment, and glassware was his and that he had previously manufactured methamphetamine at the Pipe Creek residence using Marlin Bostdorf as a methamphetamine cook.

Mr. Bostdorf was likewise advised of his Miranda rights and thereafter told agents that the methamphetamine had been previously manufactured at the Pipe Creek residence by Smallwood and himself, and Bostdorf further told the agents that a certain quantity of powder methamphetamine was buried in some trash located in a truck registered to

Robert Smallwood. The truck to which Mr. Bostdorf was referring was located outside of that residence.

A subsequent search of that vehicle uncovered a glass jar containing a quantity of powder. Appropriate chain of custody was maintained concerning this powder and it was found to have a net weight of 267 grams, and laboratory analysis determined that the powder was in fact methamphetamine as a hydrochloride with a strength of 4.8 percent, Your Honor.

Smallwood did not object to this proffer. He pleaded guilty to possession with intent to distribute methamphetamine. Before accepting the plea, the court twice advised Smallwood that "the maximum possible penalty [for this crime] is twenty years of imprisonment and/or a fine of $1,000,000." Finding that Smallwood fully understood the nature of the charges and penalties, that he freely and voluntarily waived his constitutional protections, and that a factual basis existed, the district court accepted his plea of guilt. In accord with the plea arrangement, the court thereupon dismissed the remaining counts concerning conspiracy to manufacture methamphetamine and aiding and abetting distribution of amphetamine.

The Presentence Report (PSR) filed in this case noted that, prior to obtaining the search warrant for Smallwood's residence, DEA agents had driven into the vicinity and detected a strong odor emanating from the house, which the agents associated with the manufacture of methamphetamine. The PSR also noted that the following precursor chemicals were seized: "Formylamphetamine, Formic Acid, Acetic Anhydride, Formamide, Methylamine, 110 gallons Phenylacetic Acid." Also seized were drug ledgers indicating sales of methamphetamine, along with equipment, glassware and formulas for the manufacture of methamphetamine. The PSR indicates that approximately one-half pound (267.1 grams) of 4.8 percent pure "finished methamphetamine" was found in the bed of Smallwood's pickup truck, along with an-

other 20.4 grams of methamphetamine of undetermined strength.

The PSR recounts a DEA chemist's statement that, because phenylacetic acid has a "direct correlation for methamphetamine production," the amount seized was sufficient to manufacture a practical yield of at least 30 pounds of methamphetamine. At the same time, the chemist acknowledged that three necessary precursors were missing—sodium acetate, mercuric chloride and aluminum hydride—but that empty containers seized at the premises contained trace residues of these chemicals. It was the chemist's opinion that neither methamphetamine nor amphetamine could have been produced without the sodium acetate. The government indicated to the court that sodium acetate and the other missing precursors were readily obtainable at hardware and drug stores. The PSR noted that phenylacetic acid sold for approximately $1,000 per kilogram at the time of arrest, and that Smallwood admitted to having stolen his batch from unidentified individuals in Austin, Texas.

■ The PSR based its offense level computation on the 313.5 grams of methamphetamine actually seized plus the 30 pound practical minimum yield from the seized phenylacetic acid mixture, which corresponds to a total of 13,921.5 grams of methamphetamine. Based on U.S.S.G. § 2D1.1 (prior to its amendment on November 1, 1989), the PSR placed Smallwood's base offense level at 34.[1] No adjustments were recommended. The district court apparently adjusted the base level downward by two points for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Smallwood's criminal history category was II, based on an arrest and sentence in 1981 for his role in connection with an operating methamphetamine laboratory. The PSR also informed the district court of other charges pending against Smallwood. Eight months prior to this arrest, Smallwood was arrested for possession of methamphetamine and burglary of a habitation. A plea on this charge was forthcoming at the time of the present sentencing. Also, subsequent to his arrest on his current charges but prior to sentencing, Smallwood was again arrested and charged with conspiracy to manufacture methamphetamine.[2]

Based on the record developed, the district court accepted the PSR's recommended guideline range and sentenced Smallwood to 168 months imprisonment, a fine of $2500, supervised release of 5 years, and a $50 special assessment. Smallwood objected then, as he does now, to the amount of methamphetamine serving as the basis of his sentence.

## II

Smallwood makes several related arguments. All urge that the district court's inclusion of the practical yield of methamphetamine from the phenylacetic acid violates the letter and spirit of the guidelines. He argues that the court calculated the base offense level contrary to law based upon consideration of erroneous and mis-

1. Neither Smallwood nor the government objected to the finding in the PSR regarding drug quantities and equivalencies, which the district court accepted in making its calculations. Our affirmance is based on these findings. For the record, we note what appear to be discrepancies in the PSR. They cut no figure in resolution of the case before us today. The government waived any error by not objecting, *United States v. Mourning*, 914 F.2d 699, 704 (5th Cir.1990), and none of the discrepancies we note affect any substantial right of the defendant.

Methamphetamine and amphetamine are assigned different values in the drug equivalency table following U.S.S.G. § 2D1.1; however, the PSR treated them alike. The PSR also appears to have calculated the equivalency at a uniform lower value which was 2½ times more favorable to Smallwood than it should have been. The guidelines as amended November 1, 1989 applied, but the pre-amendment guidelines were used due to concerns that the guidelines had changed the offense levels under § 2D1.1 to the disadvantage of the defendant. However, if drug equivalency calculations had been correctly made, the base offense level would have been 36 under either version of the guidelines.

2. The government informs us that after his sentencing in this matter, Smallwood pleaded guilty to unlawful possession of phenylacetic acid with intent to manufacture methamphetamine. He was sentenced to a term of 120 months in prison, to run consecutively to the sentence imposed in this cause. A separate appeal is pending. *See* Cause No. 90–5556.

leading information; that because the court considered this information, his guilty plea was not voluntary and intelligent; that the information relied upon by the court was unconstitutionally obtained; and that 21 U.S.C. § 841(d) is unconstitutionally vague.

### Guidelines Issues

The guideline applicable to Smallwood's violation of 21 U.S.C. § 841(a)(1) states that the base offense level for possession with intent to distribute a controlled substance will be "the offense level specified in the Drug Quantity Table." U.S.S.G. § 2D1.1(a)(3). Application Note 12 in the commentary to this guideline is of particular importance here. It states in part:

> Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct). If the amount seized does not reflect the scale of the offense, *see* Application Note 2 of the Commentary to § 2D1.4. U.S.S.G. § 2D1.1, comment (n. 12).

The application note referred to in the last sentence above provides:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, *and the size or capability of any laboratory involved.* U.S.S.G. § 2D1.4, comment (n. 2) (emphasis added).

The district court calculated the drug quantity involved in Smallwood's offense conduct according to the quantity of actual methamphetamine seized plus the practical yield of methamphetamine that could be derived in his laboratory from the phenylacetic acid seized at his residence. In doing so, the district court adopted the findings set forth in the PSR, which established a base offense level of 34. Had only the 313.5 grams of actual methamphetamine

been used, the base level would have been 26. This in turn would have reduced the applicable guideline range from 135–168 months to 57–71 months, assuming the same two-level decrease for acceptance of responsibility and the same criminal history category.

### A

■ When reviewing applications of the sentencing guidelines for legal correctness, this court makes its determination *de novo*. However, findings of fact are subject to the "clearly erroneous" standard of review. *United States v. Mourning*, 914 F.2d 699, 704 (5th Cir.1990).

### B

■ Smallwood's contentions regarding the district court's use of his manufacturing capabilities center upon the fact that he was not *immediately* prepared to produce methamphetamine with the phenylacetic acid because several necessary precursors were absent, and synthesis required an intermediate step. He points out that no chemical reactions were under way, and the lab was disassembled and not operating when officers entered the premises.

The factual findings supporting his manufacturing capabilities were not clearly erroneous. Smallwood admitted to having manufactured methamphetamine in his residence in the past. He owned the laboratory equipment and all of the chemicals seized there. Officers smelled the strong odor associated with methamphetamine manufacture prior to obtaining a warrant and at the time of the search. Beakers with trace residue of all absent precursors were seized, as were drug ledgers and formulas. The district court had before it evidence showing a direct correlation between the amount of phenylacetic acid seized and the amount of methamphetamine it would produce. The district court could properly discount Smallwood's protestations of ignorance or innocence of purpose. Both his prior and subsequent arrests concerning methamphetamine emphasized these assertions were disingenuous.

In their application, the guidelines are explicit. Where the drug seizure does not adequately reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. The size or capability of any laboratory involved is relevant to this calculation. U.S.S.G. § 2D1.1, comment (n. 12) (directing application of § 2D1.4, comment (n. 2)). Neither immediate nor on-going production is required. Instead, this guideline permits the court to examine the overall scheme and to infer circumstantially either the total drug quantity involved in the offense conduct or the capability of its production. *United States v. Evans*, 891 F.2d 686, 687 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2170, 109 L.Ed.2d 499 (1990); *United States v. Putney*, 906 F.2d 477, 479 (9th Cir.1990). However, *Evans, Putney*, and like cases involved defendants convicted of the *manufacture* of a controlled substance, where calculation of laboratory capabilities was clearly relevant to the offense of conviction. Here, Smallwood pleaded guilty to and was sentenced only for his possession with intent to distribute methamphetamine. He contends that using production capabilities improperly applies the guidelines to punish him for conduct made the basis of the dismissed count related to manufacture. We disagree.

The commentary to the guideline governing his conviction provides that "quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1, comment (n. 12). Additionally, possession with intent to distribute a controlled substance is a crime for which the offense level is determined largely on the basis of the quantity of the substance involved, and thus is subject to the provisions pertaining to the grouping of closely-related counts. U.S.S.G. § 3D1.2(d). Taken together, these guidelines provide that the relevant conduct and factors determining the guideline range are much broader than simply the conduct charged in the count of conviction:

> Unless otherwise specified, (i) *the base offense level where the guideline specifies more than one base offense level*, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> \* \* \* \* \* \*
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, *all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction* \* \* \*. U.S.S.G. § 1B1.3(a)(2) (emphasis added).

The commentary to § 1B1.3 illuminates the breadth of relevant conduct that may be taken into account by the district court. To determine all relevant "acts and omissions," the district court may consider any conduct "for which the defendant would be otherwise accountable." *Id.*, comment (n. 2). "Application of this provision does not require the defendant, in fact, to have been convicted of multiple counts." *Id.* Accordingly, conduct that is not an element of the offense of conviction may enter into the district court's determination of the applicable guideline range. *Id.*, comment (backg'd). By way of example, the commentary specifically states that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.*

"One of the clear purposes of § 1B1.3 of the guidelines is to include different transactions that are relevant to the charged conduct, particularly if they are part of a 'common scheme or plan.'" *United States v. Woolford*, 896 F.2d 99, 104 (5th Cir. 1990). To accord with this purpose, we have consistently interpreted relevant conduct broadly. *See, e.g., United States v. Paulk*, 917 F.2d 879, 883–84 (5th Cir.1990); *United States v. Mourning, supra*, 914 F.2d at 706. Despite dismissal of the count pertaining to manufacture, Smallwood's acknowledgment of his previous manufacture and the circumstances evidencing his intent to continue this production had he not been

arrested establish that calculating the practical yield of his laboratory from the principal ingredient found present was directly related to his overall offense conduct. The district court properly included this calculated yield in its determination of Smallwood's base offense level.

### C

■ Smallwood falls back on the argument that consideration of phenylacetic acid punishes him for possessing a legal chemical, one not even listed as a precursor at the time of his arrest on November 28, 1988.[3] However, phenylacetic acid is a necessary chemical in the manufacture of methamphetamine. A competent chemist can readily establish the amount of methamphetamine that may be produced from a given volume of phenylacetic acid. The government noted to the district court that phenylacetic acid has virtually no legitimate use in the home. It is costly and difficult to obtain. Smallwood stole his batch. In light of the facts established, the district court did not criminalize otherwise innocent possession of phenylacetic acid when it based Smallwood's sentence on the chemical's presence at his laboratory. The district court's factual findings are not clearly erroneous. Smallwood's possession of this chemical was properly treated as evidence of the nature and extent of his relevant criminal conduct.

### D

■ Smallwood argues that the phenylacetic acid was not pure, but was in fact adulterated to the extent of 1 part phenylacetic acid to 46 parts of phosphoric acid. The record does not factually support this claim. Smallwood did not raise this contention in any objection made at sentencing. Such a fact matter must be the subject of an objection at the time of sentencing if it is to be an issue on appeal. *Mourning,* 914 F.2d at 704. Had Smallwood challenged the purity of the phenylacetic acid seized, the district court could have made a reviewable finding. Absent such objection, the

district court could properly rely on the chemist's findings, which were based on the phenylacetic acid actually seized. *See United States v. Stephenson,* 887 F.2d 57, 62 (5th Cir.1989), *cert. denied sub nom. Goff v. United States,* — U.S. —, 110 S.Ct. 1151, 107 L.Ed.2d 1054 (1990); *Evans, supra,* 891 F.2d at 688. This finding encompassed all issues concerning the chemical's purity.

### E

■ Smallwood's final argument related to the court's use of the phenylacetic acid equivalency relies on note 1 of the commentary to U.S.S.G. § 2D1.4, which states in pertinent part:

> where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing. U.S.S.G. § 2D1.4, comment (n. 1)

Since he was not producing methamphetamine at the time of seizure and could not do so with materials then on hand, he maintains the court should have excluded the phenylacetic acid's potential conversion.

■ The legal component of this argument is faulty. The commentary for one guideline is not transferrable to another. *United States v. Anders,* 899 F.2d 570, 580 (6th Cir.), *cert. denied sub nom. Weddle v. United States,* — U.S. —, 111 S.Ct. 532, 112 L.Ed.2d 543 (1990). The only exception to this rule is in the case of an express instruction to the contrary in the applicable guidelines. We looked to § 2D1.4, comment (n. 2), in our analysis because of the express instruction of the guideline which was relevant to Smallwood's conviction. *See* U.S.S.G. § 2D1.1, comment (n. 12). Application note 1 to § 2D1.4 was not within this instruction.

Smallwood's argument is also factually flawed. The PSR noted that "neither

---

**3.** Phenylacetic acid was not listed as a precursor chemical until August 1, 1989. *See* 54 Fed.Reg.

31665 (1989) (codified at 21 C.F.R. § 1310.02 (1990)).

methamphetamine or amphetamine could have been produced without the Sodium Acetate." The government's factual basis for Smallwood's guilty plea stated that the laboratory was not operational. However, the court's assessment was not controlled by temporal inability to manufacture immediately. The record discloses Smallwood's drug ledgers and formulas, as well as his admissions which established that manufacture previously occurred as part of a continuing scheme. Based on these and the other facts before it, the district court could and did resolve any doubts about Smallwood's intentions and reasonable manufacturing capability against him. These findings are not clearly erroneous.

### Plea Bargain

 Smallwood argues that his guilty plea was not voluntary and intelligent. Smallwood claims surprise by the court's use of his manufacturing capabilities because the manufacturing count was dismissed. He claims that he received no consideration for his plea, which rendered his plea bargain illusory. In his words, he was sentenced "as if he had gone to trial and been found guilty of each and every charge in the indictment."

Smallwood misapprehends the impact of his plea agreement on sentencing under the guidelines. His plea, together with the factual basis represented by the government and agreed to by Smallwood, was used to establish beyond a reasonable doubt each and every element of his crime of conviction—possession with intent to distribute methamphetamine. Conviction carried a statutory term of imprisonment not to exceed 20 years. See 21 U.S.C. § 841(b)(1)(C). The guidelines seek to achieve a degree of uniformity in sentencing by narrowing this statutory range in light of the relevant offense conduct and offender characteristics. The district court's sentence was derived solely from the guidelines applicable to his offense of conviction, which looked broadly to Smallwood's total offense conduct.

A defendant may not bar consideration of conduct relevant to the court to which he pleads by bargaining for dismissal of other counts. Plea bargains do not alter how the guidelines will apply. Smallwood's bargain did not, and could not, provide that the sentencing court was bound to ignore relevant information in calculating the appropriate sentence. See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); see also U.S.S.G. § 6B1.2(a), p.s. (standards for acceptance of plea agreements); U.S.S.G. § 6B1.4, p.s. (stipulations). Information relevant to sentencing, unlike the elements of the crime, need not be established beyond a reasonable doubt. The sentencing court need only make factual findings based on a preponderance of the evidence, subject to the "clearly erroneous" standard of review on appeal. The facts pertaining to Smallwood's manufacturing intent and ability were relevant, and the district court properly considered them in choosing the applicable guideline range for his offense of conviction.

 Pursuant to FED.R.CRIM.P. 11(c), the court advised Smallwood and determined that he understood, among other things, the nature of the charge to which he was pleading guilty, the maximum punishment of imprisonment and fines for conviction, and the terms of post-imprisonment supervision. See generally United States v. Dayton, 604 F.2d 931 (5th Cir.1979) (en banc), cert. denied, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Smallwood was twice advised that his maximum exposure was 20 years imprisonment, and that the guidelines would determine the exact term. "[T]he court need not attempt to explain all the consequences that may flow either from conviction or from the imposition of sentence, so long as it explains the maximum possible sentence." United States v. Bucchino, 606 F.2d 590, 592 (5th Cir.1979), cert. denied, 446 U.S. 952, 100 S.Ct. 2917, 64 L.Ed.2d 808 (1980). Enactment of the guidelines has not displaced this rule. The court is not required to advise the defendant of his exact punish-

ment prior to accepting an otherwise valid plea of guilt. *United States v. White*, 912 F.2d 754, 756 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 529, 112 L.Ed.2d 540 (1990).

The bargain established that the government agreed to dismiss all other counts for which Smallwood was indicted, and that Smallwood would be convicted of one count subject to a maximum statutory penalty of 20 years. Smallwood acknowledged under oath that he was made no "prediction, prophesy, or promise" about the actual sentence that would be handed down. His sentence was within the statutory limit. Smallwood's attack on his voluntary, intelligent plea is without merit. *See United States v. Jones*, 905 F.2d 867, 868–69 (5th Cir.1990).

### *Evidence Considered at Sentencing*

 Smallwood contends that the district court could not properly consider any of the evidence before it because it was the product of an illegal seizure. This claim is wholly without merit. The district court specifically denied Smallwood's motion to suppress. He then pleaded guilty. A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction. *Barrientos v. United States*, 668 F.2d 838, 842 (5th Cir. 1982). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). Smallwood cannot resuscitate fourth amendment concerns solely to challenge the consideration of evidence at sentencing.

Smallwood attempts to rely on language in *United States v. Atkins*, 834 F.2d 426, 434 n. 7 (5th Cir.1987), to the effect that a guilty plea does not waive the right to assert that the sentence imposed violated double jeopardy. Atkin's contention was raised in a post-conviction motion to correct

an illegal sentence pursuant to 28 U.S.C. § 2255. *See also Barrientos*, 668 F.2d at 842–43. This double jeopardy attack asserted that the court was without jurisdictional authority to sentence him. The failure to raise a double jeopardy claim before trial waived all challenges to the indictment itself. However, it did not mean that "the defendant [was] ... forced to serve the erroneous sentence because of any waiver." *Atkin*, 834 F.2d at 434 n. 7 (quoting *United States v. Rosenbarger*, 536 F.2d 715, 722 (6th Cir.1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977)).

 This double jeopardy principle has no application to consideration at sentencing of evidence purportedly seized illegally. Such a challenge in no way affects the jurisdiction of the court to pronounce sentence on the defendant. Suppression issues must be raised prior to the entry of a plea. If dissatisfied with the result obtained, a defendant may seek an agreement to enter a conditional plea, FED.R.CRIM.P. 11(a)(2), and he may challenge the reliability or relevance of the evidence pursuant to usual sentencing procedures. No defendant is ever compelled to enter a plea of guilty. When he does not, he can preserve for appeal after trial on the merits all questions concerning violations of the fourth amendment.

### *Constitutionality of 21 U.S.C. § 841(d)*

Smallwood's last argument is that 21 U.S.C. § 841(d) is unconstitutionally vague and ambiguous. This section proscribes possession of listed chemicals with the intent to manufacture a controlled substance. This is not the statute under which Smallwood was convicted, although it was the basis underlying a subsequent conviction for his actions taken in the interim between his conviction and sentencing for possession with intent to distribute. Smallwood's appeal here concerns his guilty plea to violation of 21 U.S.C. § 841(a), which has been upheld against constitutional attack. *United States v. Daniel*, 813 F.2d 661, 663 (5th Cir.1987). His conviction for violation of § 841(d)(1) remains pending in Cause No. 90–5556.

III

The judgment of the district court is AFFIRMED.