952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jonathan John BROWN, Defendant-Appellant.
 No. 91-5235.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before KEITH and RYAN, Circuit Judges, and TIMBERS*, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant-Appellant Jonathan John Brown ("Brown") appeals his conviction and sentence, in violation of 21 U.S.C., 841(a)(1) and 846. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On September 15, 1988, the grand jury returned a fifteen-count superseding indictment against Brown and several other co-conspirators. Brown was charged in Counts I and II of the indictment. Count I of the indictment charged Brown with a conspiracy to possess and to distribute methamphetamine from around October 1987 through July 23, 1988, in violation of 21 U.S.C. 841(a)(1) and 846. Count II of the indictment charged Brown for a conspiracy to manufacture methamphetamine from around December 1987 through March 11, 1988, in violation of the same statutes.
 
 
 3
 There was evidence presented at trial suggesting the following. Craig Van Riper, his wife, Melanie Van Riper, Deborah Bennett, Ted Fowler, David Hill and others distributed large quantities of methamphetamine from early 1987 into the latter half of 1988. Craig Van Riper, around October 1987, met Ray and Lisa Loudermilk, who resided in Cleveland, Tennessee. Van Riper supplied quantities of methamphetamine to the Loudermilks, who in turn distributed the methamphetamine in Tennessee.
 
 
 4
 In an unrelated incident that occurred in early December 1987, Brown and others initiated plans to begin manufacturing methamphetamine. The plan was to manufacture methamphetamine in either Oregon, Montana or Idaho. On February 5, 1988, agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") and Oregon police thwarted this operation when they seized many of the chemicals and glassware to be used in the laboratory in Oregon. Brown escaped.
 
 
 5
 Brown traveled to Montana and left a large sum of money with a friend before proceeding to Cleveland, Tennessee. Brown then contacted the Loudermilks, whom he knew through a mutual acquaintance, and moved into their home. He immediately began participating in the Loudermilks' operation. He provided money to purchase methamphetamine which the Loudermilks sold. Brown also provided Loretta Grape with methamphetamine.
 
 
 6
 Brown soon began making plans to manufacture methamphetamine. The Loudermilks agreed to participate in the operation. Brown sent Lloyd Nelson ("Nelson") to Montana to obtain money to purchase glassware and chemicals. Nelson obtained $25,600 from another of Brown's associates. They kept the money at the Loudermilks' home.
 
 
 7
 In February 1988, Brown and the Loudermilks, with the assistance of Loretta Grape ("Grape"), began ordering the chemicals and supplies needed in the methamphetamine laboratory. By March 11, 1988, Brown and Grape had ordered and/or purchased all of the chemicals, supplies and glassware necessary to manufacture methamphetamine. They stored the majority of these items at either the Loudermilks' residence or Volunteer Chemical, the Loudermilks' automobile detailing shop.
 
 
 8
 Brown and Grape also traveled to Nashville to purchase glassware and supplies on a smaller scale to begin manufacturing methamphetamine in Tennessee while waiting for the much larger equipment to arrive.
 
 
 9
 On March 11, 1988, the agents of the Drug Enforcement Administration ("DEA"), Tennessee Bureau of Investigation, and other state and local law enforcement officials executed a federal search warrant at the Loudermilks' residence and business. Nelson Santos, a forensic chemist, assisted in executing the warrant. The search uncovered all of the chemicals, glassware and equipment necessary for the manufacture of methamphetamine. Santos testified that enough chemicals were recovered to manufacture 22 to 25 pounds of methamphetamine. In addition, the agents found over 300 doses of LSD, and approximately 13 grams of methamphetamine. Moreover, the search revealed 25 pounds of ephedrine, 100 pounds of caustic soda flakes, and 70 pounds of hydriodic acid. Brown was at the Loudermilks' home during the search. When questioned by police, Brown gave a false name and it was not discovered until several days later that he was a fugitive.
 
 
 10
 Brown then fled the Nashville area. He remained a fugitive for nearly two years. In February 1990, Federal Bureau of Investigation agents arrested Brown in Las Vegas, Nevada and he was returned to Tennessee.
 
 
 11
 The jury found Brown guilty on both counts. The court sentenced Brown to a 365 month prison term.
 
 II.
 
 12
 Brown first argues that he was denied effective assistance of counsel. He alleges that his counsel negligently failed to challenge the conviction and sentence. Moreover, he asserts that his counsel failed to seek a judgment of acquittal at the close of the evidence at trial.
 
 
 13
 Generally, a defendant may not raise an ineffective assistance of counsel claim for the first time on direct appeal. See United States v. Gonzales, 929 F.2d 213, 215 (6th Cir.1991) and United States v. Sanchez, 928 F.2d 1450 (6th Cir.1991); But see United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) ("As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations. (citation omitted) The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. 2255. When, however, the record is adequate to assess the merits of the defendant's allegations, some courts will consider them.")
 
 
 14
 We believe that Brown's failure to raise this issue in the district court precludes this court from reviewing the merits of his argument. Even if this court were to consider this issue, it is our opinion that the appellate record fails to demonstrate that Brown was denied effective assistance of counsel. Even if Brown's counsel had moved for a judgment of acquittal based on the evidence and sentence, such motion would have been denied because there is substantial evidence to support Brown's conviction and sentence.
 
 III.
 
 15
 Brown next argues that the district court incorrectly computed the amount of methamphetamine used to determine his sentence. Brown alleges that the court speculated and used mere conjecture in determining the quantity since no methamphetamine was produced and the laboratory was never constructed.
 
 
 16
 The scope of our review of the district court's decision on the amount of drugs for which a defendant is to be held accountable is limited to determining whether the district court's finding of fact is clearly erroneous. United States v. Walton, 908 F.2d 1289, 1300 (6th Cir.1990) cert. denied, 111 S.Ct. 2870 (1991).
 
 
 17
 The sentencing guidelines and accompanying application notes authorize courts to approximate the quantity of drugs in certain instances. U.S.S.G. 2D1.4, comment. (n. 2). Where the drug seizure fails to reflect the scale of the offense, U.S.S.G. 2D1.1, comment. (n. 12) directs the sentencing court to apply U.S.S.G. 2D1.4, comment. (n. 2). According to U.S.S.G. 2D1.4, comment. (n. 2), the size or capability of any laboratory involved in drug manufacturing is relevant to the calculation of the quantity of drugs involved. "Neither immediate nor on-going production is required." United States v. Smallwood, 920 F.2d 1231, 1237 (5th Cir.) ("[T]his guideline permits the court to examine the overall scheme and to infer circumstantially either the total drug quantity involved in the offense conduct or the capability of its production"), cert. denied, 111 S.Ct. 2870 (1991).
 
 
 18
 Brown was indicted on two counts, including a conspiracy to manufacture methamphetamine. Although the lab had not yet been constructed, the sentencing judge acted properly pursuant to U.S.S.G. 2D1.4 in approximating the amount of drugs that the lab would have yielded upon completion. See e.g. Smallwood, 920 F.2d at 1237. The district court made its approximation based on the unrebutted testimony of Nelson Santos, a forensic chemist. Santos testified that 22-25 pounds of methamphetamine could have been produced based on the amount of ephedrine seized. Furthermore, all the necessary equipment such as glassware and chemicals needed to produce methamphetamine were discovered. In fact, Santos testified that the only chemical absent was red phosphorous and it is "simply used as a catalyst to help the reaction go a little faster." Under these circumstances, we hold that the finding of the district court is not clearly erroneous.
 
 IV.
 
 19
 Brown next argues that his due process rights were violated because the prosecutor decided to prosecute him for a federal crime rather than a state violation. The federal crime mandated a more substantial sentence than the state violation.
 
 
 20
 Penalties available upon conviction may influence a prosecutor's choice between bringing a federal or state crime. See United States v. Batchelder, 442 U.S. 114, 124-25 (1979). We find no merit to this claim.
 
 V.
 
 21
 Brown also alleges that count two of the indictment should be dismissed because the conspiracy charged in count one encompasses that set forth in count two. The first count charged Brown with a conspiracy to possess with the intent to distribute. The second count charged Brown with conspiring to manufacture methamphetamine. Brown argues that these allegations amounted to a single conspiracy. The government contends that Brown was charged and convicted of two separate conspiracies. We agree.
 
 
 22
 "When ... separate conspiracies are both founded upon a general conspiracy statute, the relevant inquiry is whether there existed more than one agreement to perform some illegal act or acts." Ward v. United States, 694 F.2d 654, 661 (11th Cir.1983) (emphasis in original); United States v. Miller, 870 F.2d 1067, 1071 (6th Cir.1989) (The "manufacture of marijuana and the possession with the intent to distribute marijuana are 'two statutory offenses [that] may be punished cumulatively'). United States v. Swingler, 758 F.2d 477 (10th Cir.1985) illustrates an analogous factual situation. In Swingler, defendants appealed their convictions under the same statute at issue in this case, 21 U.S.C. 846. They asserted that the indictment was duplicitous.
 
 
 23
 The Swingler court rejected the defendants' claims. The tenth circuit applied a two step analysis. Step one questioned whether the jury was properly instructed that it must find two separate agreements in violation of the law to convict the defendants for two separate conspiracies. The second step in the Swingler court's analysis asked whether the evidence was sufficient to support the jury's findings.
 
 
 24
 Applying the Swingler analysis to the facts in the present case, it is clear that Brown was convicted on two separate counts. As in Swingler, the district judge charged the jury that it needed to find two separate violations of the law to convict defendant on both counts of the indictment. In addition, the jury returned a conviction on each count, which like Swingler, demonstrated that they were able to distinguish between them.
 
 
 25
 There is also sufficient evidence to support the jury's findings. Count one of the indictment charged the defendant with a conspiracy to possess and to distribute methamphetamine. The evidence at trial showed that, upon arrival in Tennessee, Brown provided money to the Loudermilks for the purchase of methamphetamine which the Loudermilks redistributed. Moreover, he provided methamphetamine to others such as Loretta Grape. In addition, Ms. Loudermilk testified that Brown masterminded the plan whereby he would manufacture the drug and then distribute the drugs through the Loudermilks.
 
 
 26
 Count two of the indictment charged Brown with a conspiracy to manufacture. There was also overwhelming evidence in the record to support the verdict on this count. All the necessary equipment such as glassware and chemicals needed to produce methamphetamine were discovered in the search of the Loudermilks' home. Grape and Ms. Loudermilk testified that Brown owned the chemicals and glassware. Nelson Santos, a forensic chemist, testified that 22-25 pounds of methamphetamine could be produced based on the amount of ephedrine seized. Based on the facts in the record, we find that there is sufficient evidence from which the jury could find beyond a reasonable doubt that Brown participated in two distinct criminal conspiracies.
 
 VI.
 
 27
 Finally, Brown argues that the grand and petit jury compositions were constructed to intentionally discriminate against him by a "covert scheme" of the prosecution. Under 28 U.S.C. 1867, an appeal of the jury composition is precluded if not raised in the trial court. United States v. Young, 570 F.2d 152, 153 (6th Cir.1978) ("The requirements of the statute are strictly enforced."). Because Brown failed to raise this issue below, we are precluded from considering this issue on appeal.
 
 
 28
 Even if this court considered the issue, there is nothing in the record to substantiate these claims. Brown raises conclusory arguments which are not supported by the record, he cites no record or facts to substantiate his claims, and he fails to specify how the prosecution scheme was employed. Thus, we reject Brown's final claim.
 
 VII.
 
 29
 Accordingly, we AFFIRM the conviction and sentence by the Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee.
 
 
 
 *
 The Honorable William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation