**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-10602**
**Summary Calendar**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**GABRIEL HUERTA,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
(5:95-CR-76)

_____

December 31, 1996

Before JONES, DeMOSS and PARKER, Circuit Judges.

PER CURIAM:[*]

## FACTUAL BACKGROUND

Gabriel Huerta ("Huerta") was indicted on five counts for drug related charges.

Huerta pled guilty to counts 3 and 5 of the indictment, which charged him with distribution of

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

methamphetamine and possession with intent to distribute heroin, pursuant to a plea agreement he and his attorney drew up. Per the agreement, the government dismissed counts 1, 2 and 4.

In his plea agreement, Huerta, with his trial attorney, had signed a factual resume that admitted he had possessed and distributed 292.93 grams of methamphetamine (or 370.8 grams of 79% d-methamphetamine hydrochloride), and that he possessed and distributed 338.4 grams of heroin, which were the offenses alleged in Counts 3 and 5. In addition to pleading guilty to counts 3 and 5, Huerta waived all rights in his plea agreement other than the right to an attorney.

Huerta was sentenced by the district court to 200 months as to each of the remaining counts, to run concurrently. Huerta gave timely notice of his intent to appeal. Five days after this notice, on May 22, 1996, Huerta's trial counsel filed a motion to withdraw as counsel because he had been elected a state district judge. This request was granted on the same day it was filed, and Ralph H. Brock ("Brock") was appointed as Huerta's appellate counsel. On May 23, 1996, the federal district court signed an order permitting Huerta to file amended notice of appeal, and Huerta appealed based on the contention, *inter alia*, that pursuant to 18 U.S.C. § 3742(a), the sentence was improperly imposed.

Now before this Court is Brock's motion for leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). Huerta has not filed a response to this motion.

**DISCUSSION**

*Anders* established standards for an appointed attorney who seeks to withdraw from a direct criminal appeal on the ground that the appeal lacks an arguable issue. After a "conscientious examination" of the case, the attorney must request permission to withdraw and must submit a "brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744.

2

The attorney must isolate "possibly important issues" and must "furnish the court with references to the record and legal authorities to aid it in its appellate function." *United States v. Johnson*, 527 F.2d 1328, 1329 (5th Cir. 1976). After the defendant has had an opportunity to raise any additional points, the court must fully examine the record and decide whether the case is frivolous. *Anders*, 386 U.S. at 744.

Brock has briefed the following issues: 1) whether the district court properly accepted Huerta's guilty plea; 2) whether the statutory special assessment is constituti onal; 3) whether the district court properly sentenced Huerta pursuant to the drug equivalency tables; and 4) whether the district court properly considered uncharged drug quantities as relevant conduct in determining the sentences. Huerta has had the opportunity to raise additional issues, but has not done so. This Court must now examine the record and determine whether this case presents only frivolous issues for appeal.

1.      Whether the district court properly accepted Huerta's guilty plea.

In the plea agreement, Huerta waived "his right to appeal from and/or contest the judgment, conviction and sentence rendered in this case, on any ground including, but not limited to, any ground otherwise allowed by 28 U.S.C. § 2255 and 18 U.S.C. § 1291." Huerta retained his right to bring a direct appeal from the sentence based on any ground allowed by 18 U.S.C. § 3742. "A plea of guilty admits all elements of a formal criminal charge and waives all nonjurisdictional defects in proceedings leading to the conviction." *United States v. Smallwood*, 920 F.2d 1231, 1240, *reh. denied* 927 F.2d 602 (5th Cir. 1991). A valid guilty plea also constitutes a waiver of all "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Huerta has not challenged the validity of his

3

guilty plea, and there is no indication in the record that the plea was not knowing and voluntary. Thus, the district court properly accepted Huerta's plea of guilty.

2.      Whether the statutory special assessment is constitutional.

The district court imposed a statutory special assessment of $50 per count on Huerta pursuant to 18 U.S.C. § 3013.  Brock has raised the question whether the legislation establishing the mandatory special assessment was an unconstitutional "revenue bill" because it did not originate in the House of Represent atives.  However, as Brock points out, while the constitutionality of this statute has been questioned, it was ultimately upheld by the Supreme Court in *United States v. Munoz-Flores*, 495 U.S. 385 (1990).  *Id.* at 401.  Thus, this issue provides no basis for appeal.

3.      Whether the district court properly sentenced Huerta pursuant to the drug equivalency tables.

Brock briefed the question whether the district court erred in sentencing Huerta pursuant to the drug equivalency tables provided under the Federal Sentencing Guidelines.  The district court adopted Paragraph 30 of the Presentence Report, which converted the different drugs for which Brock was convicted into an equivalent amount of marijuana to determine the base offense level.  This conversion process is set out in the drug equivalency tables of U.S.S.G. § 2D1.1 cmt. 10. Brock notes that this Court has sustained the use of the drug equivalency tables to compute the base offense level.  *See, e.g., United States v. Eastland*, 989 F.2d 760, 768 (5th  Cir.), cert. denied, 510 U.S. 890 (1993), and *United States v. Harris*, 932 F.2d 1529, 1539 (5th Cir. 1991), *cert. denied*, 502 U.S. 897 (1991).  Because Huerta failed to raise this issue in the district court, it is reviewed for plain error.  *See United States v. Calverley*, 37 F. 3d 160, 162 (5th Cir. 1994) (en banc) (observing that if appellant shows clear or obvious error that affects his substantial rights, the appellate court has

discretion to correct errors that seriously affect the fairness, integrity, or public reputation of judicial proceedings), *cert. denied*, --- U.S. ----, 115 S. Ct. 1266 (1995).

The staff attorney who wrote the screening memo for this case raised an additional reason for contesting Huerta's sentencing--the Presentence Report which the district court adopted contained some typographical or computational errors. In the Presentence Report, the probation officer found that Huerta had possessed and intended to distribute 438.1 grams of heroin, 248 grams of cocaine, and 369.38 grams of methamphetamine. Under the Guidelines, one gram of heroin was equal to one kilogram of marijuana, one gram of cocaine was equal to 200 grams of marijuana, and one gram of methamphetamine was equivalent to 10 kilograms of marijuana. Therefore, Huerta presumably should have been found to have possessed the equivalent of 438.1 kilograms of marijuana (for the heroin), 49.6 kilograms of marijuana (for the cocaine), and 3693.8 kilograms of marijuana (for the methamphetamine). Instead, the report converted Huerta's drugs into 438 kilograms, 49.8 kilograms, and 3,793.8 kilograms, respectively, for a total of 4,181.6 kilograms of marijuana, which resulted in an offense level of 34.

As the staff attorney noted, however, these errors in the drug equivalency calculation did not materially affect the probation officer's offense level calculation. Although it was proper to add together all of the drugs based on their equivalency in marijuana, the 369.38 grams of methamphetamine, properly calculated and standing alone, would have resulted in an offense level of 34, because the equivalent amount of marijuana (3693.8 kilograms) would have exceeded 3,000 kilograms. *See* U.S.S.G. § 2D1.1(c)(5) (offenses involving 3,000 to 10,000 kilograms of marijuana have a base offense level of 34) & comment 6 (stating that "[w]here there are multiple transactions or multiple drug types, the quantities of drugs are to be added [using the drug equivalency tables].").

5

4.      Whether the district court properly considered uncharged drug quantities as relevant conduct in determining the sentences.

Huerta's base offense level was calculated based on his possession with intent to distribute or distribution of 438.1 grams of heroin, 348 grams of cocaine, and 369.38 grams of methamphetamine. However, he was convicted only on Count 3 for distributing 292.93 grams of methamphetamine (actual), and on Count 5, of possession with intent to distribute approximately 338.4 grams of heroin. Therefore, Brock raises the question whether the district court in sentencing Huerta properly considered conduct outside the conduct charged in the counts to which Huerta pled guilty.

Huerta conceded in the factual resume contained in his plea agreement that he was "accountable" under U.S.S.G. § 1B1.3 for all drug quantities listed in the factual resume, including those that were not charged in counts 3 and 5 of the indictment. The factual resume discloses that Huerta engaged in a series of drug transactions with two undercover officers involving the sale of heroin, cocaine, and methamphetamine. The factual resume recites that, over a four-month period during the summer of 1995, Huerta and his co-conspirators sold or attempted to sell to the undercover officers in separate transactions, 249 grams of cocaine, 49.8 grams of heroin, 76.45 grams of methamphetamine, 292.93 grams of methamphetamine, 49.9 grams of heroin, and 338.4 grams of heroin. At sentencing, Huerta's trial counsel argued that Huerta's criminal behavior was caused by his drug addiction. Clearly, each of the transactions was part of the same course of conduct and was properly considered as relevant to the offenses of conviction. Moreover, as Brock notes, the

6

consideration of the relevant conduct did not affect the severity of the sentence because the quantities charged in counts 3 and 5, considered alone, would also have resulted in an offense level 34.[1]

This Court has observed that "a defendant's base offense level for the offense of conviction must be determined on the basis of all relevant conduct as defined in U.S.S.G. § 1B1.3." *United States v. Vital*, 68 F.3d 114, 117 (5th Cir. 1995). Considering uncharged conduct in determining a defendant's base offense level under § 1B1.3 is not unconstitutional. *United States v. Patten*, 40 F. 3d 774, 776 (5th Cir. 1994), *cert. denied*, --- U.S. ----, 115 S. Ct. 2558 (1995). *See Witte v. United States*, --- U.S. ----, 115 S. Ct. 2199, 2204-09 (1995) (holding that relevant conduct provisions merely enhance the punishment for the offense of conviction and do not violate double jeopardy principles). The district court has wide discretion in the kind and source of information it considers in imposing a sentence and in evaluating reliability. *United States v. Young*, 981 F.2d 180, 185 (5th Cir. 1992) (internal quotation and citation omitted), *cert. denied*, 508 U.S. 955, 980 (1993).

## CONCLUSION

Brock is correct in arguing that none of these issues merits appeal. There are no other issues worthy of discussion. Therefore, Brock's motion for leave to withdraw is **GRANTED**. Furthermore, Huerta's frivolous appeal is **DISMISSED**.

---

[1] The 292.93 grams of methamphetamine (actual) alleged in Count 3 are equivalent to 2,929.3 kilograms of marijuana, and the 338.4 grams of heroin alleged in Count 5 are equivalent to 338.4 kilograms of marijuana, making a total of 3267.7 kilograms of marijuana.